RICKA ZORKOWSKI, Appellant, v. WILLIAM WALDORF ASTOR, Respondent.

1. IMPLIED COVENANT.   A covenant will not be implied unless it clearly appears from the words used that one was intended.

2. EXPRESS PROMISE WITHHELD.   When it is apparent that the parties to a written agreement had the subject in question in mind, and either has withheld an express promise in regard to it, one will not be implied.

3. LEASE — COVENANT BY LESSOR TO RENEW, WITH NO COVENANT BY LESSEE TO ACCEPT RENEWAL.   Where a lease of land by the owner thereof to the owner of the building thereon, so far as it relates to the subject of renewal, contains mutual covenants for an appraisal and a separate covenant by the lessor that if he does not elect to pay for the building he will grant a renewal, without any provision concerning the acceptance, by the lessee, of a renewal, but with an absolute covenant by him to surrender possession at the end of the term, a covenant by the lessee to accept, corresponding to the lessor's covenant to grant a renewal, will not be implied; and, hence, on the lessor's electing not to take the building, but to renew the lease, the lessee cannot be compelled to accept and execute the renewal lease, unless he elects so to do.

4. ELECTION BY LESSEE TO ACCEPT RENEWAL.   An election by such lessee to accept the renewal lease, after having expressly refused it when tendered, is not constituted by remaining in possession after an appraisal and expiration of the term, under a claim, asserted promptly and in good faith, that the rent had not been fixed by a valid appraisal.

Zorkowski v. Astor, 13 Misc. Rep. 507, modified.

(Argued May 3, 1898; decided June 7, 1898.)

APPEAL from a judgment of the General Term of the late Superior Court of the city of New York, entered July 16, 1895, affirming a judgment in favor of defendant entered upon the report of a referee.

This action was brought to set aside an appraisal of land for the purpose of fixing the rental upon the renewal of a lease, which, after the usual covenants on the part of the landlord and tenant, provided as follows: " And the said parties for themselves and their legal representatives mutually covenant and agree that, provided the said party of the second part (tenant) and her legal representatives shall observe, keep and perform all the covenants and agreements herein contained on

50

her part to be kept and performed, and, if there shall then be standing on the said demised premises the building heretofore erected thereon under a lease heretofore granted to James Henderson and James Blackhurst, viz., a dwelling house not less than three stories in height above the basement, with front of brown stone, yellow stone or Philadelphia brick, covering the whole front of the lot, or any building of similar description in its place in case of its destruction, then and in such case each of the said parties or their legal representatives, during the thirty days immediately preceding three months before the expiration of the term hereby granted, shall choose one disinterested, reputable freeholder in the city of New York, and the two thus chosen shall select a third person, also being a freeholder in said city, and the persons thus chosen and selected, first being duly sworn or affirmed for such purpose, shall value and appraise the fee simple value of the said lot of land, exclusive of the house standing thereon, and shall also value and appraise the house standing on the front of said lot, which said valuation and appraisal made by the said appraisers or any two of them shall be reduced to writing and signed by them or any two of them in duplicate, and one part thereof delivered to each of said parties or their legal representatives within thirty days after the appointment of the said appraisers. And the said party of the first part (landlord) covenants for himself and his legal representatives that, in case he or they do not elect within thirty days after the receipt of such appraisal to pay for the said building at such appraised value, he or they will grant a renewal of the said lease for a further term of twenty years at an annual rent equal to five per cent upon the said appraised value of the said lot, to be paid quarterly. And, further, that in case he or they elect to take the said building at the said valuation, he or they will pay to the said party of the second part or her legal representatives the amount of such valuation at the expiration of the term hereby granted, provided the said building shall then be in the same good order and condition as when valued as aforesaid."

Before the expiration of the original term the defendant had become the owner of the land and the plaintiff had become the owner of the house. Within the period named each party chose an appraiser, and the two thus selected chose a third. The three appraisers, after due notice to all interested, heard the statements and arguments presented, and a majority of them agreed upon a basis of valuation, and thereupon the appraiser selected by the tenant, who had refused to agree to the valuation made by his associates, declined to act further in the matter. After that, without consulting him, a formal appraisal was signed by the two remaining appraisers and delivered as required by the lease. Four days later the defendant notified the plaintiff that he elected to renew the lease pursuant to the appraisal. The plaintiff, however, refused to accept the award, but remained in possession and, sometime after the expiration of the term, brought this action to set aside the appraisal on various grounds. The issues were referred to a referee, who decided them in favor of the defendant, dismissed the complaint upon the merits, and adjudged that "the plaintiff execute and deliver to the defendant a lease of the premises" in question based upon the valuation fixed by the award. Upon appeal to the General Term the judgment was affirmed and the plaintiff appealed to this court.

*Lewis L. Delafield* for appellant. Whatever construction may be placed upon the action of the arbitrators at their only meeting on March 17, 1892, their award was void. (Russell on Arbit. 263; Morse on Arbit. & Award, 340; *Brown* v. *Kingsley*, 1 Johns. Cas. 334; *McInroy* v. *Benedict*, 11 Johns. 402; *Ackley* v. *Finch*, 7 Cow. 290; *Harris* v. *Norton*, 7 Wend. 534; *Borrowe* v. *Milbank*, 5 Abb. Pr. 28, 31; *Fudickar* v. *Guard. Mut. L. Ins. Co.*, 62 N. Y. 392, 400; *Newland* v. *Douglass*, 2 Johns. 62; *Bouck* v. *McComb*, 4 Johns. Ch. 405; *Matter of Hall & Hinds*, 2 Man. & Gr. 847; *Hutchinson* v. *Shipperton*, 13 Ad. & El. 955; *Brown* v. *Green*, 7 Conn. 536; *Allen* v. *Runney*, 1 Conn. 569.)

The award should be set aside because the arbitrators Acton and Read did not "value and appraise" the property. (*Hart. F. Ins. Co.* v. *Bonner Merc. Co.*, 44 Fed. Rep. 151; *Van Cortlandt* v. *Underhill*, 17 Johns. 405.) The award should be set aside for two additional reasons: *First*, because the arbitrator Read was not a "disinterested" person as required by law and by the terms of the lease, and, *second*, because of the misconduct of Read and Acton in the course of the arbitration. (Morse on Arbit. & Award, 106; *Bradshaw* v. *Ag. Ins. Co.*, 137 N. Y. 137, 145; *Kiernan* v. *Dutchess Co. Mut. Ins. Co.*, 150 N. Y. 190; *Van Cortlandt* v. *Underhill*, 17 Johns. 405; *Nat. Bank of Republic* v. *Darragh*, 30 Hun, 29; 93 N. Y. 655; *Strong* v. *Strong*, 9 Cush. 560, 570.)

*Charles A. Peabody, Jr.*, and *Elihu Root* for respondent. The proceedings are favored by the law, and all presumptions are in favor of sustaining them. (*Perkins* v. *Giles*, 50 N. Y. 228, 235; *Fudickar* v. *Guard. Mut. L. Ins. Co.*, 62 N. Y. 392.) They cannot be impeached for mistake or error. (*Hoffman* v. *De Graaf*, 109 N. Y. 638; *Morris Run Coal Co.* v. *Salt Co.*, 58 N. Y. 667; *Sweet* v. *Morrison*, 116 N. Y. 19.) There is no substance either in fact or in law to the objections made as to the valuation of the houses. (*Bouck* v. *Miller*, 4 Johns. Ch. 405; *Perkins* v. *Giles*, 50 N. Y. 235.) There is no just ground of objection to Mr. Read as an appraiser. (*Fox* v. *Hazelton*, 10 Pick. 275; *Goodrich* v. *Hulbert*, 123 Mass. 190; *Cheney* v. *Martin*, 127 Mass. 304; *Kiernan* v. *Dutchess Co. Mut. Ins. Co.*, 150 N. Y. 190.) There was no misconduct in the action of the appraisers. (*Cobb* v. *Dolphin Mfg. Co.*, 108 N. Y. 463; *Wiberly* v. *Matthews*, 91 N. Y. 648; *Re Morrison*, 147 U. S. 14.) The award was properly signed by Acton and Read without Lynch. (*Ott* v. *Schroeppel*, 5 N. Y. 482; *Crofoot* v. *Allen*, 2 Wend. 494; *Schultz* v. *Halsey*, 3 Sandf. 405; *Kingston* v. *Kincaid*, 1 Wash. C. C. 448; *Goodman* v. *Sayres*, 2 Jac. & W. 261; Caldwell on Arbit. 210; *Livingston* v. *Sage*, 95 N. Y. 289.) The judgment properly directed specific performance of the covenant to take a new lease based on the

appraised value. (*Kelso* v. *Kelly*, 1 Daly, 419; *Viany* v. *Ferran*, 5 Abb. [N. S.] 112; 54 Barb. 529; *Maury* v. *Post*, 55 Hun, 454.)

VANN, J. We think that the facts found by the referee have sufficient support in the evidence to prevent interference by this court after affirmance by the General Term. (*White* v. *Benjamin*, 150 N. Y. 258.) Upon those facts as the basis of adjudication, we are of the opinion that the plaintiff was not entitled to any relief, and that the complaint was properly dismissed for the reasons given by the referee and the General Term.

To the extent, however, that the judgments below awarded affirmative relief to the defendant by requiring "the plaintiff to execute and deliver" to him "a lease of the premises" in question, we think they are erroneous. The lease, so far as it relates to the subject of renewal, contains mutual covenants for an appraisal and a separate covenant by the lessor to renew the lease or pay for the building at his election, but no covenant on the part of the lessee to accept a new lease if tendered. Her covenant to surrender possession at the end of the term was absolute, and not in the alternative to surrender possession or take a renewal lease. She was not bound to accept a new lease, but had the option to accept one in case the lessor did not take advantage of his right to pay for the building. The lessor was bound, after a valid appraisal, to elect to purchase or to renew, but when he had made his election the lessee was not bound to accept the offer on his part in either form because she had not agreed to. If he elected to purchase, self-interest would, doubtless, induce her to accept the money, but if he elected to renew the lease she might prefer to decline it, as the rent might be so high that she would rather lose her building than agree to pay it for the long period named. His express covenant to grant her a new lease was met by no corresponding covenant on her part, either express or implied, to accept it. He was obliged to make her one of two offers, but she was not obliged to accept either

offer when made, for a covenant will not be implied unless it clearly appears from the words used that one was intended. (*Booth* v. *Cleveland Rolling Mill Co.*, 74 N. Y. 15; *Hudson Canal Co.* v. *Penn. Coal Co.*, 8 Wall. 276.) When it is apparent that the parties had the subject in mind, and either has withheld an express promise in regard to it, one will not be implied. (*Bruce* v. *Fulton Nat. Bank*, 79 N. Y. 154.) In this case the court said: "It is very plain that here is a covenant by the lessor only,— an agreement by her to give a new lease. There is none by the lessee to accept it. If we consider it in connection with the covenants which have preceded it, we see that it thus expresses the whole intention of the parties, for such is their language. It declares a covenant on the part of one to do an act. If it had been intended to bind both, or to impose a correlative obligation on the other, we should expect a clear statement to the effect, not only that one would give, but that the other would take a lease, or the use of words from which such an agreement must necessarily have been implied. It is not a present grant accepted by the other party, but a conditional promise or covenant to grant in the future a further term. It may be regarded as an offer for the benefit of the lessee, or as an inducement to him to build upon or improve the premises, giving assurance that if he did so he should enjoy the fruits of his expenditure for a longer period. (*Abeel* v. *Radcliff*, 13 J. R. 298)."

It is insisted, however, that the lessee by remaining in possession elected to accept the renewal, but election depends on intention and as she continued in possession under a claim, asserted promptly and in good faith, that the rent had not been fixed by a valid appraisal, it was no evidence of an intention to elect. If her claim was not well founded, she was subject to dispossession for holding over after the expiration of her term. It was a wrongful act for which the lessor has a remedy, but he cannot compel her to execute a lease, which she never agreed to execute. As she not only refused to accept the new lease when tendered, but also claimed that she had not been put to her election whether to accept a new

lease or not, the mere fact that she held over was not, under the circumstances, such a decisive act as would support the finding of an election on her part and the referee did not so find. Her claim as to the validity of the award was not well founded, but still her prompt and persistent assertion of the claim in connection with an absolute refusal of the lease shows that she did not elect to take it.

The judgments below, therefore, should be so modified as to strike out the provision requiring the plaintiff to execute and deliver to the defendant a new lease of the premises described in the complaint, and as thus modified affirmed, without costs in this court to either party.

All concur.

Judgment accordingly.