### BARKER v. PULLMAN CO.

(Circuit Court of Appeals, Second Circuit. November 22, 1904.)

No. 33.

1. CONTRACTS—OPTIONS.

Where a contract between an insurance company and a palace car company provided that the insurance company agreed, on the expiration of the palace car company's policies, to renew the same for three years at a specified rate, which agreement was signed by both parties, it constituted a mere option, which did not bind the car company to take the insurance.

2. SAME—REFORMATION—MUTUAL MISTAKE.

Where negotiations for a contract for insurance were made between agents of the respective parties, and the contract, which, when reduced to writing, constituted a mere option, was signed by both principals, evidence that the agents understood the agreement to be different from the contract embodied in the writing was insufficient to establish a mutual mistake on the part of the principals, warranting a reformation of the written contract.

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 124 Fed. 555.

This cause comes here upon appeal from a decree of the Circuit Court, Northern District of New York, dismissing the bill.

On March 10, 1898, the Wagner Palace Car Company and the Agricultural Insurance Company entered into a written contract providing:

"That in consideration of one dollar and other valuable considerations, the Agricultural Insurance Company agrees, on the expiration of the present insurance policy of the Wagner Palace Car Company, to renew the same for three years for the rate of $29^{17}/_{100}$ annual premium, payable in nine equal installments, one each in September, October, and November, respectively of each year.

"The Agricultural Insurance Company agrees to give substantially the same companies comprising the syndicate now on the risk.

"In witness whereof the parties hereto have hereunto appended their signatures and seals the day and year first above-written.

　　　　　　　　　　　"The Wagner Palace Car Company,
　　　　　　　　　　　　　"By W. S. Webb, President.
　　　　　　　　　　　"The Agricultural Insurance Co.
"Witness, F. G. Smith.　　　　　By ————————."

In accordance with this agreement the Agricultural Company furnished insurance to the Wagner Company in the year 1899, and down to August 13, 1900. Before the expiration of the second year, negotiations between the Wagner Company and the defendant, the Pullman Company, resulted in an agreement whereby the Wagner Company sold, assigned, and transferred to the Pullman Company all its property and assets. The complainant contends that, by the terms of that agreement, defendant adopted all the benefits and assumed all the responsibilities of the Wagner Company. The defendant company refused to continue the insurance for the third year. Thereupon the complainant, to whom the Agricultural Insurance Company had assigned the contract and all its claims thereon, brought a bill in equity to have the above-quoted agreement reformed by inserting the words, "And the said Wagner Palace Car Company agrees to accept such insurance for the term of three years as aforesaid," before the attesting clause of said agreement, and to recover damages for the breach of said agreement, thus reformed. The cause is reported at Circuit in 124 Fed. 555.

E. J. Nathan, for appellant.
Allan McCulloh, for appellee.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

PER CURIAM. It is conceded that the facts are undisputed. The main questions presented are whether the complainant can enforce a contract made between the Wagner Palace Car Company and the defendant, for the benefit of a third party, the Agricultural Insurance Company, assignor of complainant; and, secondly, whether reformation was justified if the inference to be implied from the language of the agreement failed to support the complainant's construction, viz., that it obligated the Wagner Company to accept renewals of the insurance for the full term of three years.

Upon this branch of the case the judge who heard the cause in the Circuit Court exhaustively discussed the evidence, and expressed the following conclusions:

"The agreement of March 10, 1898, is complete and perfect in itself. In consideration of one dollar and other valuable considerations (not mutual covenants and agreements therein contained, implying that such were in fact made and should have been inserted), the Agricultural Company agrees, on the expiration of a then existing policy of insurance, to renew the same on the terms mentioned. It may be claimed that it could not renew insurance unless the Wagner Company accepted the policy. But this agreement, as written, is in the nature of an option. The Wagner Company has paid for the agreement of the insurance company to renew the insurance, and may enforce the agreement, and insist on having what it has contracted for. But this is very far from justifying an implied agreement on the part of the Wagner Company to accept the insurance. There is nothing in the context of the agreement indicating the necessity for any such covenant to make it a complete contract, and one in accordance with the intent of the parties. It will be presumed, with such language, only that the Wagner Company did not intend to obligate itself to accept the renewal of the insurance. Zorkowski v. Astor, 156 N. Y. 393, 50 N. E. 983; Hale v. Finch, 104 U. S. 261, 26 L. Ed. 732; Hudson Canal Co. v. Pennsylvania Coal Co., 8 Wall. 276, 19 L. Ed. 349. Indeed, complainant admits that no covenant or agreement to accept the renewal of the insurance can be implied. The brief of his counsel says: 'Under the authorities, no implied covenant may be drawn from the language employed in the agreement herein.' Hence equitable relief is sought in this action, with the recovery of damages as an incident, on the ground that the covenant or agreement to accept the renewal of the insurance was omitted from the written contract by mutual mistake; that is, that both parties agreed that such a provision should go in the written

agreement, but that, by the error or oversight of the parties or draftsman, it was left out, and the omission not discovered and assented to by the parties at the time. The defendant denies any error or omission or mutual mistake. * * * But has any such mutual mistake been proved? The burden of proof was on the complainant and in such cases the evidence must be clear, convincing, and satisfactory. The mistake must be clearly shown. If the proofs are doubtful and unsatisfactory, and if the mistake is not made entirely plain, equity will withhold relief. Baltzer v. R. Co., 115 U. S. 645, 6 Sup. Ct. 222, 29 L. Ed. 505. * * * It is impossible to find any specific oral agreement on the part of Dr. Webb to take this insurance, or to assent to a written agreement containing a covenant to accept the insurance and pay the premium. Webb was seeking to protect his company, which was as well done by having the agreement as it is, as it would have been by putting in a covenant binding the Wagner Company to accept the insurance. The testimony of the witness Smith that Webb agreed with his suggestion that they had better take this three-years insurance, as it would protect them (the Wagner Company) against an increase in the rate of premium during the three years, and positively save them one-sixth of the rate they were then paying, does not establish an agreement between Webb and Barker to accept the insurance. Barker was not present, and Webb's approval of, or acquiescence in the wisdom of, such a suggestion, is not proof that it was ever agreed to put a clause in the written agreement binding the Wagner Company to accept. These were expressions of opinion. No statement was made that a clause to that effect should go in the proposed agreement, which was then in writing and being discussed. All that was said had reference to the written agreement then under consideration, and which had been drawn up before that time, and was then submitted to Webb for his approval and signature. There is no suggestion of any proposed change in the writing as drawn. The officers of both companies had it, read it, and assented to it. Webb accepted the offer made in writing, but did not agree to accept and pay the premium. Well might he say it is wise to accept this offer made in writing, which he had before him, and so protect the company, so long as it imposed no obligation to accept. It is urged that the agreement, as drawn and executed, is one-sided. This may be, but this fact does not establish a different agreement, or a mutual mistake of the parties. There is no suggestion that the agreement was hastily drawn or executed. There is no suggestion that it was executed in any but a deliberate manner, after full consideration, and with a full understanding of its terms. This court cannot find from the evidence before it that there was a mutual mistake by which the provision sought to be inserted, in substance or effect, was omitted."

We entirely concur with the view thus expressed in the Circuit Court, and are of the opinion that the decree should be affirmed, with costs.