ENTERPRISE COMPANY, INC., A NEBRASKA CORPORATION, APPELLEE, V. AMERICOM CORPORATION, A NEBRASKA CORPORATION, APPELLANT.

510 N.W.2d 537

Filed August 17, 1993.    No. A-92-004.

Robert B. Creager, of Berry, Anderson, Creager & Wittstruck, P.C., for appellant.

Larry V. Albers and, on brief, David A. Hecker, of Erickson & Sederstrom, P.C., for appellee.

CONNOLLY, MILLER-LERMAN, and WRIGHT, Judges.

CONNOLLY, Judge.

This appeal arises from the trial court's order granting a motion for partial summary judgment in favor of the appellee, Enterprise Company, Inc. (Enterprise), in its action for declaratory judgment against the appellant, Americom Corporation (Americom). Enterprise claimed that Americom had breached its commercial lease with Enterprise by vacating the premises 2 years prior to the expiration of the lease term and, therefore, was liable for the accruing rent and other expenses. The trial court agreed. We affirm.

## I. FACTS

Enterprise and Americom entered into a written lease agreement for commercial office space. The lease ran from

April 1, 1987, to March 31, 1990. Americom was to pay rent in the amount of $1,873.33 per month. The lease included the following provision: "Lessee shall be further entitled to One (1), Three (3) year options [sic] to extend this Lease. Each option must be exercised in writing and delivered to Lessor no later than six (6) months prior to the end of the term then in effect." Under the terms of the lease, if Americom exercised the option, the monthly rent would increase to $1,967 in the fourth year, $1,996.50 in fifth year, and $2,026.44 in the sixth year. Additionally, Americom would be liable for monthly payments on the utilities, taxes, common area maintenance charges, and insurance.

Americom paid all amounts due through the expiration of the initial lease term on March 31, 1990. It is undisputed that Americom never provided Enterprise with written notification of an intention to exercise the option to extend the lease, and Americom claimed it never intended to extend the lease for another 3 years. However, Americom continued in possession of the premises until March 31, 1991, and paid the increased monthly rent of $1,967, the amount of fourth-year rent established in the option provision, throughout the holdover period. Enterprise concluded that Americom had exercised the extension option and elected to consider Americom a tenant for the entire 3-year option period.

Near the end of the fourth rental year, Americom notified Enterprise that it would vacate the premises at the conclusion of the fourth rental year on March 31, 1991. In a letter to Americom dated April 5, 1991, Enterprise declared that Americom was in default on the April 1991 rent of $1,996.50, the monthly rental amount for the fifth year pursuant to the extension option. Americom made no rental payments after March 31 and vacated the premises in early April.

Enterprise filed a declaratory judgment action, asking the court to find Americom liable for breach of the lease and for damages accruing after Americom vacated the premises and ceased monthly payments. Such a procedure is permissible under Neb. Rev. Stat. § 25-21,156 (Reissue 1989) and *Properties Inv. Group v. JBA, Inc.*, 242 Neb. 439, 495 N.W.2d 624 (1993). Apparently, Enterprise moved for partial summary

judgment on the issues of breach of the lease and damages already accrued, while Americom filed a cross-motion for summary judgment in its favor. Neither of the motions for summary judgment is included in the record.

The trial court found that there were no genuine issues of material fact in the case and granted Enterprise's motion for partial summary judgment. The court awarded Enterprise $12,200.97 for damages that had accrued from April 1 to July 1, 1991, and retained jurisdiction of the case to determine future damages which might occur. Americom's cross-motion for summary judgment was denied.

## II. ASSIGNMENTS OF ERROR

We consolidate Americom's assignments of error into the following: The trial court erred in granting Enterprise's motion for partial summary judgment because Americom did not exercise the option to extend the lease by holding over and continuing to pay rent.

## III. STANDARD OF REVIEW

We first note that the order granting partial summary judgment was a final, appealable order. See *Properties Inv. Group v. JBA, Inc., supra* (an order is final and appealable when the substantial rights of the parties to the action are determined, even though the cause is retained for the determination of matters incidental thereto).

On appellate review of a summary judgment, the court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

Summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Id.*

Regarding a question of law, an appellate court has an obligation to reach a conclusion independent of that of the trial court. *Nebraska Builders Prod. Co. v. Industrial Erectors*, 239 Neb. 744, 478 N.W.2d 257 (1992).

## IV. ANALYSIS

We agree with the trial court that there are no genuine issues of material fact in this case. Enterprise concedes that it was not notified by Americom in writing at least 6 months prior to the end of the original 3-year term of an intention by Americom to exercise the extension option. Enterprise argues that, as a matter of law, it was entitled to presume that Americom had manifested its intention to exercise the option by holding over and paying rent in an amount consistent with the terms of the option.

### 1. NEBRASKA PRECEDENT

Enterprise relies heavily on *Kuhlman v. Lemp Brewing Co.*, 87 Neb. 72, 126 N.W. 1083 (1910), the only Nebraska case pertinent to our review. In *Kuhlman*, the tenant had a lease for 1 year, from May 1, 1906, to May 1, 1907, with an option to extend the lease for an additional 3-year period. The rent was $50 a month. Without giving the landlord notice of its intention before expiration of the lease, the tenant held over for approximately 7 weeks beyond May 1, 1907, and then vacated the premises. It is not clear from the opinion whether the tenant paid rent for the period of time it held over.

In an action by the landlord for rent payable after the expiration of the first year of the lease, the trial court gave the following jury instruction:

> "[W]here a tenant with the consent of his landlord, express or implied, holds over his term, the law presumes a continuation of the original tenancy for a like term and upon the same conditions, and you are instructed that the first term mentioned in the lease was one year, and if you find from the evidence that the defendant held over his term . . . then you are instructed that the defendant would be liable for rent at the rate of $50 a month for the year ending May 1, 1908."

*Id.* at 74, 126 N.W. at 1084. The jury ruled in favor of the landlord.

It is not evident from the opinion why the trial court ignored the 3-year commitment in the extension option and instead presumed that a holdover would result in another 1-year

commitment. The opinion does not indicate the relief sought by the landlord. The landlord was the appellee; perhaps she did not seek rent for the entire 3-year extension. In any event, the Nebraska Supreme Court rejected the appellant's argument that it had been a tenant at will. The court affirmed the judgment in favor of the landlord, holding that

> where a tenant under a written lease for one year, with the option of . . . again leasing the premises for one or more years, holds over without exercising his option, the landlord may, if he so desires, consider him a tenant for another year, and liable for the rent for that period at the rate fixed by the terms of the lease.

*Id.* at 75, 126 N.W. at 1084.

*Kuhlman* is of limited value as we review the case at bar because in *Kuhlman*, the court seems to have assumed, without deciding, that the tenant did not, by holding over, exercise the option to extend the lease for 3 years. The question we must decide is whether by holding over and paying increased rent, Americom exercised the option to extend its lease with Enterprise for 3 years.

## 2. OTHER JURISDICTIONS

Where a lease provides that the tenant may at his or her option have an extension for a specified time after the expiration of the term of the lease, the mere holding over after the expiration of the lease is generally held to constitute an election to hold for the extended term, particularly where the lease provides that the rent shall be increased in the event of an extension and the increased rent is paid and accepted. See 51C C.J.S. *Landlord & Tenant* § 77 (1968). Where a lessee who has the right to extend the lease on giving notice of such intention remains in possession without giving such notice, the lessor has the choice of treating the lessee as a trespasser or waiving the notice requirement and treating the lessee as holding by virtue of an extension of the lease. *Id.*

There is ample authority to support the proposition that a lessee may be found to have exercised an option to extend or renew a lease by holding over and continuing to pay rent. For a representative case, see *Cusamano v. Anthony M. DiLucia,*

*Inc.*, 281 Pa. Super. 8, 421 A.2d 1120 (1980). Americom places great emphasis on the fact that, according to the terms of its lease with Enterprise, an extension of the lease was contingent upon Americom providing Enterprise with timely written notice of an intention to exercise the option for extension, which Americom did not do. That fact is of no import, because a lessor is free to waive such a notice provision. See *Perrotti v. Chiodo*, 21 Conn. App. 288, 573 A.2d 342 (1990) (although a notice requirement in an option to renew a lease is a condition precedent to exercising the option, the requirement is for the benefit of the lessor and can be waived by the lessor orally or by conduct). See, also, *Wolf v. Tastee Freez Corp.*, 172 Neb. 430, 109 N.W.2d 733 (1961) (a lessor may waive the requirement in a lease of notice of renewal by lessee at or within a certain time). Furthermore, there are numerous cases supporting the proposition that a tenant may be found to have exercised an option to extend or renew a lease regardless of whether the tenant complied with a provision in the lease requiring the tenant to timely notify the landlord of the tenant's intention to exercise the option.

One such case, *H. H. Rosin Co. v. Chavin*, 257 A.2d 228 (Del. 1969), is analogous to the case before us. In *Chavin*, the tenant had a 2-year lease with an option to renew for an additional 3-year period at increased rent. If the tenant intended to exercise the option for a 3-year renewal, the lease called for the tenant to provide the landlord with written notice of such intention 3 months prior to the expiration of the lease. Although the tenant never notified the landlord of an intention to exercise the option, the tenant held over after expiration of the original lease and paid the increased rent as set forth in the option clause. Observing that the provision requiring 3 months' written notice was solely for the benefit of the landlord, who was free to waive that provision and allow renewal without the required notice, the Supreme Court of Delaware held that the landlord was justified in concluding that the tenant's holding over and his unconditional payment of the increased rent indicated that the tenant had decided to exercise the option. The court ruled that the tenant was liable for the rent for the entire 3-year renewal period.

In *Sprayberry Crossing Partnership v. Tuley*, 198 Ga. App. 53, 400 S.E.2d 334 (1990), the tenant had a 5-year lease with an option to renew for an additional 5 years at increased rent. If the tenant intended to exercise the option for a 5-year renewal, the lease called for the tenant to provide the landlord with written notice of such intention 6 months prior to the expiration of the lease. The lease also contained a provision stating that if the tenant remained in possession of the premises after expiration of the lease with the landlord's acquiescence and without any express agreement between the tenant and landlord, the tenant would be treated as a tenant at will and would continue to pay rent at the same rate in effect at the end of the lease. The tenant assigned its interest in the lease 5 months before expiration without having notified the landlord of an intention to exercise the option for renewal. Two weeks after the assignment, the tenant's assignee, the appellee, notified the landlord of his intention to exercise the option. The original lease ended in November 1983. In December 1983, the landlord informed the appellee that the rent was being raised by 5 percent in accordance with the terms of the option for renewal. The appellee paid the increased rent, as did a subsequent assignee. The Court of Appeals of Georgia ignored the issue of whether the appellee's untimely notice to the landlord constituted proper notice of his intention to exercise the option. Instead, the court found that

> appellee's conduct in paying the increased rent amount pursuant to special stipulation B [which called for a 5-percent rent increase in the event of renewal], rather than asserting his right to continue paying the old rent . . . as a tenant at will, and the lessor's acceptance of the payments establishes that the parties intended to extend the lease and that the lessor waived the notice provision.

*Id.* at 55, 400 S.E.2d at 335. The appellee was held liable for rent for the additional 5-year period pursuant to the terms of the renewal option.

### 3. AMERICOM EXERCISED THE OPTION

Our research on this matter leads us to adopt and apply the following rule: Where a tenant holds over and pays rent in an

amount consistent with the terms of an option to extend or renew the lease, the landlord may treat the tenant as if the tenant has exercised the option regardless of whether the tenant complied with a provision in the lease requiring the tenant to timely notify the landlord of the tenant's intention to exercise the option.

As a holdover tenant, Americom paid the increased rent as set forth in the extension option. Considering Americom's holdover status and its unconditional payment of the increased rent, we find that Enterprise was justified in concluding that Americom had decided to exercise the extension option. We also find that Enterprise's acceptance of the increased rent payments established that the parties intended to extend the lease and that Enterprise waived the notice requirement pertaining to the option. Therefore, we affirm the judgment of the trial court granting partial summary judgment in favor of Enterprise.

Affirmed.